No. 36,441

HENRY HOUSEHOLTER, *Appellant,* v. R. F. HOUSEHOLTER (also known as Fried Householter) and MRS. R. F. HOUSEHOLTER, His Wife, *Appellees.*

(164 P. 2d 101)

Opinion filed December 8, 1945.

*M. V. B. Van De Mark* and *Charles C. Van De Mark,* both of Concordia, were on the briefs for the appellant.

*Clarence Paulsen,* of Concordia, was on the briefs for appellee R. F. Householter.

The opinion of the court was delivered by

BURCH, J.: The question presented for consideration is whether a

clause in a will created a joint tenancy or a tenancy in common. The action was brought for the partition of certain land and the issues were submitted to the district court upon a stipulation. The district court held that a joint tenancy was created by the will and from such ruling the appeal was perfected. A short statement of the essential facts follows.

On August 20, 1901, Henry Householter, Sr., executed the will in question. Such will was written by M. V. B. Sheafor, who had served one term as probate judge of Cloud county, Kansas, in 1889 and 1890. A little over a year after the will was executed the testator died and the will was admitted to probate, without contest, and became final and effective by the ordinary administration of the estate. Henry Householter, Sr., left surviving him four children, whose mother was his first wife; also his second wife, Elizabeth, and two sons of whom she was the mother. The litigation is between the two sons last referred to and arose after the death of their mother.

The will, which was written in longhand, reads in substance, as follows:

". . . I Henry Householter . . . being of mature age and of sound disposing mind . . . realizing the uncertainty of life and the certainty of death . . . hereby make, declare and publish this my . . . will and testament.

"That is to say that I Henry Householter . . . do give, devise and bequeath my estate, real and personal, as follows . . .

"1st. I desire that all my just debts shall be paid.

"2d. I give devise and bequeath to my daughter Dela Hartbank now living in the state of Illinois and my son Harley M. Householter now living in Nebraska *jointly* the following described real estate to wit. [certain described land].

"3d. I give devise and bequeath to my son Lue Householter now living in Kansas and my son Edward Householter now living in Arkansas, *jointly,* [certain described land] *to have jointly.*

"4th. I give devise and bequeath to my son Henry Householter the following real estate to wit [certain described land] *to have jointly.*

"5th. I give devise and bequeath to my beloved wife Elizabeth or Lizzie Householter and my little boy Fried Householter *jointly* the following real estate to wit [certain described land]. I also give devise and bequeath to my said wife and my said son Fried *jointly* [certain described land]. I also give devise and bequeath to my said wife and my said son Fried all my personal property consisting of horses, cattle, hogs, in fact all live stock of every kind and nature that I may own at the time of my death. Also all other personal property of every kind and description that I may own at the time of my death.

"And in this making, declaring and publishing this my last will and testament, I hereby revoke and declare null and void all other and former wills or will which I may heretofore made and in order to the end that this my last will and testament may be fully provided for in the due full and complete execution thereof. I hereby appoint my son Lue Householter executor of this . . . my last will and testament and it is my further desire that my said son shall not be required to give a bond as the executor. . . ." (Italics supplied).

The will was attested by two witnesses in compliance with the statute. One of the witnesses was the scrivener hereinbefore named, M. V. B. Sheafor. The portions of the will which have been deleted herefrom, for the purpose of brevity are largely repetitious, superfluous and of no aid in considering the intent of the testator or of the writer of the instrument. We are concerned primarily with the proper construction which should be given to the fifth paragraph of the will.

If paragraph five created a joint tenancy between the testator's surviving wife and his little boy, Fried, then, as a matter of law, upon the death of either of them, the survivor would become the owner of all of the real property devised by the testator in such paragraph. If the paragraph created a tenancy in common, then, upon the death of either of them, the right of ownership would not accrue to the survivor but would descend to the heirs or pass by will to the devisees of the deceased. In the present case the widow, Elizabeth, survived her husband about thirty-seven years and died intestate on November 11, 1939. During such thirty-seven years she received all of the income from the land in question. She never remarried and left as her sole heirs the appellant, Henry Householter, and Fried Householter, who with his wife appear as the appellees. The appellant contends that as one of the surviving heirs of his mother, Elizabeth, he inherited a one-fourth interest in the involved land. Such a result would follow if the fifth paragraph of the will created a tenancy in common and not a joint tenancy.

Early in the history of the common law of England joint tenancies were favored and constructions creating tenancies in common were looked upon with disfavor by the courts. Today the courts in England and in most of the states of our Union look with disapproval and discountenance upon any construction favoring the creation of a joint tenancy as distinguished from a tenancy in common. During the period when such a metamorphosis of the law occurred, the legislature of our state in May, 1891, passed what is now G. S.

1935, 22-132, which, in substance, abolished joint tenancy and survivorship in cases wherein they resulted by operation of law. Joint tenancies were not abolished by the statute, however, and in instances wherein the language used in the grant or devise makes it clear that a joint tenancy was intended to be created, the courts are bound to give it effect and they have no authority to deprive the parties of their right to convey or devise property in such manner as they may desire under the law. A recent careful consideration of the general rules relating to legal construction of instruments creating a tenancy in common or a joint tenancy will be found in the opinion of this court written by Mr. Justice Wedell in the case of *Bouska v. Bouska*, 159 Kan. 276, 153 P. 2d 923. Courts, in furtherance of favoring constructions creating tenancies in common, have held that the mere use of such terms as "jointly" and "joint property" are not sufficient standing alone to create a joint tenancy and such is particularly true where it is apparent from other provisions of the will that the phraseology employed by the testator was not used in a technical sense or when other words inserted in the instrument indicate that the parties who were to hold the estate "jointly" could convey or devise the same and thus defeat or destroy the right of survivorship. (See *Weber v. Nedin*, 210 Wis. 39, 246 N. W. 307; *Overheiser v. Lackey*, 207 N. Y. 229, 100 N. E. 738, Ann. Cas. 1914C 229; *Rodney v. Landau*, 104 Mo. 251, 15 S. W. 962.) Other courts have held that such terms cannot be ignored and that it is improper for courts to excise or delete them from a document. (See *Case et al. v. Owen et al.*, 139 Ind. 22, 47 Am. St. Rep. 253, 38 N. E. 395; also *Regnier v. Regnier*, 122 Kan. 59, 251 Pac. 392; 14 Am. Jur. 85, § 13; and 26 C. J. S. 428, note 24.)

The controlling rule for the interpretation of wills which cannot be modified or diminished is that the intention of the testator must prevail. If the intention of the testator can be determined from the will itself it is unnecessary and often improper to give consideration to any other element. Correlating questions, however, often inject themselves into such controversies. In the present case a question occurring in conjunction with the execution of the will arises as to whether the testator intended to use the word "jointly" in a technical sense. In some instances if such a word be used by a layman unfamiliar with technical distinctions, it may be insufficient. If the term be used, however, by one cognizant of its legal significance, courts are obliged, in most instances, to construe its

use in accordance with its technical meaning. Also courts ordinarily will not indulge in the presumption that the testator acted without advice or learning in drafting his will. (See 28 R. C. L. 233, § 193, citing *Edgerly v. Barker,* 66 N. H. 434, 31 A. 900, 28 L. R. A. 328.)

Applying the foregoing general principles to the present case results in the following observations: It is apparent that the will was drawn by someone who was more or less familiar with the technical meaning of the language used. The trial court made a special finding in its comprehensive and commendable memorandum opinion, reading as follows: "The context and language of said will as a whole exhibits a fair understanding of form, language and legal terms common to instruments of like character prepared by persons having legal training and experience." It is true that the will was drawn by a party who was not a lawyer but such party had served as a justice of the peace, and also as a probate judge in 1889 and 1890. As hereinbefore set forth the legislature passed in May, 1891, an act which abolished joint tenancies and survivorship in cases where they resulted by operation of law. In such circumstances it is reasonable to presume that a man who had served as a probate judge in the year preceding the creation of the statute probably would have been cognizant of the legislation and more or less familiar with the general subject of joint tenancies as distinguished from tenancies in common. Counsel for the appellant insist that the finding above set forth was not justified and that a reading of the document involved discloses that the drawer thereof didn't have any legal knowledge because he used the word "bequeath" in devising real property and the word "devise" in bequeathing personal property. Such indiscriminate usage is rather common. (See *Breen v. Davies,* 94 Kan. 474, 146 Pac. 1147.) Counsel for appellant also call our attention to improper phraseology, misspelled words, improper use of capital letters in the will and direct our attention, in particular, to the fact that in paragraph four of the will the devise is to but one person—"My Son Henry"—and that it concludes with the words "to have Jointly." Such a circumstance can be accounted for readily when we realize that the will was drawn in longhand and that the phrase may have been added inadvertently to the wrong paragraph. When we consider, however, that the word "jointly" was used in the second, third and fifth paragraphs of the will, apparently advisedly, and that it was not used in that part of the fifth paragraph which bequeathed to the widow and the ap-

pellee, Fried Householter, the personal property, it becomes apparent that the drawer of the instrument probably used the term with full realization of its legal consequence. If this court should excise from the fifth paragraph of the will the word "jointly" in the two instances in which it is used in such paragraph, it would follow, as a matter of consistent legal logic, that it should be excised also from paragraphs two and three, which would result in our deleting the term five times from the document. We would be changing entirely the legal significance of an instrument created forty-five years ago without any satisfactory explanation of why the term "jointly" was used. The more reasonable probability is that the term was used five times in the will with the intention on the part of the drawer of the instrument to have the word considered as significant from a technical standpoint. We cannot indulge in the presumption that the testator executed the instrument containing such a repetition of the word "jointly" without having had some explanation made to him of its legal significance. If such reasoning be sound, then the intention of the testator clearly appears from the wording of the will, no ambiguity develops therein, and all else must yield to his expressed intent.

Many other questions concerning equities, ambiguities, family understanding and laches have been presented and briefed by the respective counsel for the litigants but in view of our conclusion that the word "jointly" was used intentionally in a technical sense by the testator and the drawer of the instrument, it is unnecessary to give consideration to such extraneous questions.

One other question is presented which must have our consideration. Counsel for the appellant contend that the district court should have allowed them attorneys' fees even though they represented the unsuccessful party in the case. They assert that the sole question to be decided is the proper construction of a will and that without a decision on such question, the appellees would have been unable to perfect title to the involved real estate. In support of their contention they cite *Singer v. Taylor,* 91 Kan. 190, 137 Pac. 931, and other cases. In the present case, however, the appellant sought the recovery of a specific interest in described land. The appellees were forced involuntarily to uphold a will which did not appear on its face to be ambiguous. No estate or trust fund was benefited by the litigation. From a standpoint of construction and equity there appears to be no more reason why the appellees should

pay attorneys' fees to counsel for appellant than the other devisees named in the will even though they were not parties to the action. The appellant sought to recover for his personal benefit—not for the benefit of all. parties incidentally concerned with the litigation. In such cases attorneys' fees ordinarily are not properly allowed to counsel for the unsuccessful party. (See *Bartlett v. Mutual Ben. Life Ins. Co.*, 358 Ill. 452, 193 N. E. 501, and annotation in 142 A. L. R. 1459.) Counsel for the litigants in this case should be complimented upon the manner in which the case was tried and the candid helpful briefs filed in this court.

The judgment of the district court is affirmed.