(54 P.3d 511)

No. 88,218

IN THE MATTER OF THE ESTATE OF RUTH I. LASATER, Deceased. STATE OF KANSAS, DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Appellant*, v. E. BRUCE LASATER, *Appellee*.

Opinion filed September 6, 2002.

*Brian M. Vazquez*, of Kansas Department of Social and Rehabilitation Services, for appellant.

*Timothy P. O'Sullivan, Jason P. Lacey*, and *Carolyn L. Rumfelt*, of Foulston Siefkin, L.L.P., of Wichita, for appellee.

Before GREEN, P.J., WAHL, S.J., and JOHN J. BUKATY, JR., District Judge, assigned.

WAHL, J.: The trial court determined that title to Ruth Lasater's home passed to her son outside her probate estate by virtue of his right of survivorship as a joint tenant. The Estate Recovery Unit of the Department of Social and Rehabilitation Services (SRS) ap-

peals. The case was submitted to the trial court on an agreed stipulation of facts, which reads:

"1. On or about December 23, 1991, Ruth I. Lasater established the 'Ruth I. Lasater Revocable Trust' and signed a 'Declaration of Trust Ownership,' a copy of which is attached and marked for reference as Exhibit 'A';

"2. On September 28, 2000, Ruth I. Lasater signed a 'Trustee's Deed,' a copy of which is attached and marked for reference as Exhibit 'B,' which transferred real estate legally described as:

'Lot Fourteen (14), Dudte's Replat of Block Two (2), J.H. Anderson's Addition to the City of Newton, Kansas' from the 'Ruth I. Lasater Revocable Trust' to Ruth I. Lasater individually;

"3. On September 28, 2000, Ruth I. Lasater signed a 'Quit Claim Deed,' a copy of which is attached and marked for reference as Exhibit 'C,' which transferred the above-identified real estate from Ruth I. Lasater, individually, to Ruth I. Lasater and E. Bruce Lasater as joint owners; E. Bruce paid $680 or approximately 1% of the value of the property at the time of deed execution;

"4. On February 25, 2001, Ruth I. Lasater passed away in Wichita, Sedgwick County, Kansas."

The deed conveying these interests reads:

"QUIT CLAIM DEED
RUTH I. LASATER, a single person
QUIT CLAIMS
to
RUTH I. LASATER and E. BRUCE LASATER

(family contribution, no monetary consideration given) all of her right, title and interest in and to the following described real estate located in the County of Harvey, State of Kansas, to-wit:

"Lot Fourteen (14), Dudte's Replat of Block Two (2), J.H. Anderson's Addition to the City of Newton, Kansas.

"It is the intent of the grantor that as a result of such conveyance the ownership interest in the above-described property of Grantee, RUTH I. LASATER, shall be ninety-nine percent (99%) and the ownership interst [sic] in the above-described property of the other grantee, E. BRUCE LASATER, shall be one percent (1%). Such ownership interests shall govern all aspect [sic] of the joint tenancy ownership of the Grantees in said property, including but not limited to, right to income and ownership rights upon any later sale of, or partition or severance of such joint tenancy ownership interest in said property. This recitation of intent shall be interpreted so as to conclusively rebut any presumption under the law of equal joint tenancy ownership by the Grantees in the aforesaid property. Such recitation shall not be interpreted, however, in a manner which would defeat the

survivorship rights of the surviving joint tenant to succeed to a predeceased joint tenant's ownership interest in said property."

Prior to Ruth's death, she received $5,703.41 in Medicaid assistance as a result of her last illness. SRS initiated a creditor's administration of Ruth's estate making claim for reimbursement of her final medical expenses. At the time of her death, Ruth's home was her only significant asset.

Deciding the case on stipulated facts, the trial court found that the quitclaim deed of September 28, 2000, established a joint tenancy with right of survivorship, and the title to Ruth's home passed to her son as surviving joint tenant at the time of her death.

The question before this court is identical to that before the trial court. On the record of stipulated facts, the parties seek interpretation of the legal effect of Ruth's quitclaim deed. The interpretation and legal effect of written documents are matters of law upon which our standard of review is unlimited. *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152-53, 959 P.2d 894 (1998). Where the controlling facts are based on written or documentary evidence or stipulations, this court has as good an opportunity to examine and consider the evidence as did the court below. *Heimann v. Parrish*, 262 Kan. 926, 927, 942 P.2d 631 (1997).

SRS claims the trial court erred in determining Ruth's deed created a joint tenancy and contends Ruth's interest in her home should have been administered in her estate subject to the claims of creditors rather than passing directly to her son outside of probate. SRS claims Ruth's intent to create a joint tenancy was insufficiently clear to satisfy statutory requirements. Further, her deed created different percentage interests in Ruth and her son, violating the unity of interest required of joint tenants. Due to these flaws, SRS claims Ruth created a tenancy in common.

Lasater contends the trial court was correct and that Ruth clearly created a joint tenancy and that Ruth's interest passed to him upon her death.

When construing the meaning of a deed, the intention of the grantor, as gathered from examination of the instrument as a whole, is the primary consideration. *Bennett v. Humphreys*, 159 Kan. 416,

419, 155 P.2d 431 (1945). The meaning of a document and the intent of the parties is determined from the four corners of an unambiguous instrument, harmonizing the language therein, if possible. An interpretation should not be reached by merely isolating one particular sentence or provision, but by construing and considering the full instrument in its entirety. *In re Estate of Kruckenberg*, 171 Kan. 450, 454, 233 P.2d 472 (1951).

In the distant past, the common law favored creation of joint tenancies. Transfers to two or more persons were presumed to create joint tenancies and not tenancies in common. This presumption has been reversed by statute in Kansas, as in most other states. By current Kansas statute, when a deed creating a cotenancy in two or more persons is found to be ambiguous, there is a presumption in favor of creation of a tenancy in common: "Real or personal property granted or devised to two or more persons . . . shall create in them a tenancy in common with respect to such property unless the language used in such grant or devise makes it clear that a joint tenancy was intended to be created." K.S.A. 58-501.

In addition to meeting the statutory requirement of clarity, a grant transferring property in joint tenancy must satisfy the traditional doctrine of "four unities." *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988); *Simonich, Executrix v. Wilt*, 197 Kan. 417, 421, 417 P.2d 139 (1966). These unities are: (1) unity of interest, (2) unity of title, (3) unity of time, and (4) unity of possession. An interest or estate must be acquired by all cotenants, by the same conveyance, commencing at the same time, and held for the same term of undivided possession. It is interesting to note that there is no requirement of unity of equality of interests.

It is true, however, that a very common characteristic of joint tenancies is equality of ownership interests among the joint tenants. The Kansas Supreme Court has recognized that presumption of equal ownership, but it has recognized that presumption to be rebuttable. *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 463, 574 P.2d 1382 (1978).

We find Ruth's intention was clear. Her intent to create a joint tenancy is best seen in her repeated use of the words "joint tenant" or "joint tenancy." She used these words five times in the habendum paragraph. As in *Householter v. Householter*, 160 Kan. 614, 617-19, 164 P.2d 101 (1945), we cannot indulge in the presumption that Ruth executed an instrument containing the repetition of a legal phrase five times without having had some explanation made to her of its significance. See 160 Kan. at 619. Certainly, use of the "magic" joint tenancy language "as joint tenants with the right of survivorship and not as tenants in common" would have been helpful and would probably have avoided this litigation.

SRS argues that Ruth and Bruce did not share a unity of interests. This is incorrect. The "unity of interests refers to the necessity that all tenants have interests of the same duration, and accordingly one cannot be a joint tenant for life and another joint tenant for years." 2 Tiffany Real Prop. § 418 (3d ed. 2001). Ruth's deed created life estates in both parties. They shared a unity of interests.

SRS's attack on the nature of Ruth's interest goes to the relative possessory interests of Ruth and Bruce. The interests of any group of cotenants are always undivided or they would not be cotenants. It is certainly more common to have cotenants with undivided 50% or 25% interests. There is no prohibition, however, against one cotenant having an undivided 99% interest and the other cotenant having an undivided 1% interest in the land.

The deed's grant language is more consistent with a tenancy in common. Ruth failed to use the "magic words" for the usual creation of a joint tenancy. However, the habendum language of the deed is sufficiently clear to construe her intent to create a joint tenancy with the right of survivorship. Further, Ruth's deed satisfied the "four unities" doctrine. Ruth created a joint tenancy with right of survivorship between herself and her son.

Affirmed.