Stevens v. Hicks.

---

ANNA STEVENS, *Appellant*, v. HARRY HICKS, *Appellee*, and EMMA HICKS, *a Minor, etc., et al.*

No. 16,924.

SYLLABUS BY THE COURT.

1. RESULTING TRUST—*Circumstantial Evidence—Land Purchased in Name of Another, Since Deceased.* Where a son buys and pays for real estate and causes it to be deeded to his widowed mother, with whom the son and three daughters are living together as a family, and where, after the death of the mother, a daughter claiming as an heir brings an action to partition the property, and the son is incompetent to testify to any transaction with the mother affecting the title, the fact that there was an agreement that the mother was to hold the title in trust for him may be proved by circumstantial evidence.

2. ——— *Fraudulent Intent—Evidence.* All the circumstances of the transaction may also be considered in determining whether it was consummated without any fraudulent intent.

3. FRAUD—*Presumptions and Burden of Proof—Resulting Trust.* As a general rule, neither fraud nor a fraudulent intent is to be presumed, but good faith is presumed until disputed; but to sustain a resulting trust under the last clause of section 9701 of the General Statutes of 1909 the absence of a fraudulent intent must affirmatively appear. Such absence of fraudulent intent may be inferred when the relations of the trustee and *cestui que trust* and the circumstances surrounding the transaction are disclosed and it appears that no right of any other person was involved or affected thereby.

Appeal from Sedgwick district court. Opinion filed March 11, 1911. Affirmed.

*Earl Blake, W. A. Ayres,* and *Walter A. Blake,* for the appellant.

*E. L. Foulke,* and *C. A. Matson,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: The trial was to the court in this case and no special findings of fact were made, but there was a finding generally in favor of defendant Harry Hicks, and a judgment that he was the owner of the property in controversy. The undisputed evidence shows that on the 14th day of July, 1903, three days before he attained his majority, Harry Hicks purchased the property, which is described by metes and bounds as being 50 x 140 feet in dimensions, within or adjacent to the city of Wichita, Sedgwick county. Shortly afterward a deed was executed by the owner of the property and placed in a bank in Wichita, to be delivered on final payment. The deed was made to the mother of Harry Hicks, but he was earning $65 a month, and made the payments in full. Prior to the purchase of this tract Mrs. Hicks had bought a small dwelling house, to be removed, and borrowed $40 to pay for it. Harry furnished her the money to repay the loan, caused the tract he had purchased to be surveyed, and paid the expenses of moving the house thereon. Harry and his mother and sisters resided together as a family. His mother worked out, sewing as she could, and the daughters did some work. Mrs. Hicks died June 9, 1904, leaving the plaintiff and the defendants herein as her only heirs at law. Prior to her death the entire purchase price of the lots and of the house moved thereon was paid by Harry.

After the death of the mother one daughter, Anna, who was married, brought this action against her brother and two sisters for a partition of the property and for ejectment. Harry Hicks answered by a general denial, and alleged that he was the owner of the prop-

erty in fee simple, that he had purchased and paid for the property, but that the deed was taken in the name of Nannie G. Hicks, in trust for him, with the understanding and agreement that the property should be his; also, that he was in the possession of the property and the legal and equitable owner thereof, and asked to have his title quieted against the plaintiff and his co-defendants. His sister Emma was a minor, and answered by guardian, claiming an undivided one-fourth interest. His sister Grace did not answer, but it seems she had quitclaimed all right to the property to Harry. The court made no special findings of fact, but found generally in favor of Harry, and adjudged that he was the sole owner of the property. The plaintiff appeals.

The mother being dead, and the adverse claimants having derived their title, if any they have, immediately from her, the son Harry was, of course, incompetent to testify in the action to any transaction or communication had personally with her affecting the title. Therefore what the agreement was, if any, between them, could only be shown by circumstantial evidence. During the mother's lifetime some of the witnesses said she had referred to the place as "our home"; that not long before her death she stated to her father that the lots were Harry's; and all the circumstances surrounding the transaction were such as to furnish some evidence that there was an agreement that she was to hold the property for him, and that there was no other person whose interest could be affected thereby, as his money alone had paid for the property. Under such circumstances the agreement may be proved by circumstantial evidence. (See *Rayl v. Rayl*, 58 Kan. 585; *Lyon v. Berlau*, 67 Kan. 426; *Piper v. Piper*, 78 Kan. 82, and cases there cited.)

It is the general rule that neither fraud nor fraudulent intent is to be presumed, but, on the contrary, good faith is to be presumed until it is disputed or there is

23—84 KAN.

some showing of bad faith. In this case all the circumstances of the parties were disclosed to the court. All the circumstances tend to show that there were no creditors, that the plaintiff and her sisters were not wronged in any way, and there could be no fraudulent intent as to them by any agreement between the mother and her son that she was to hold the property for him. We think from all the circumstances surrounding the transaction and the parties that the court was justified in finding that there was such an agreement, and that it was without any fraudulent intent. These facts being found, a trust resulted in favor of defendant Harry Hicks, under the third exception in section 9701 of the General Statutes of 1909 (Gen. Stat. 1868, ch. 114, § 8).

The judgment is affirmed.