No. 24,565.

FRANK H. TAYLOR, *Appellee*, v. EVERETT WALKER, *Appellant*.

SYLLABUS BY THE COURT.

1. TRUST AND TRUSTEES—*Legal Title to Real Estate Held by One in Trust for Another*. The evidence considered, and held to be sufficient to sustain a finding of fact that, pursuant to agreement, and without fraudulent intent, one person held the naked legal title to real estate in trust for another.

2. SAME—*Trust May Be Inferred from Relation of Parties and Pertinent Circumstances*. In such cases it is not indispensable that the agreement be in writing. It may be inferred from the relations of the parties, their financial means, their conduct and admissions, and other pertinent circumstantial evidence, and it is sufficient that the court or jury trying the case be satisfied that the trust relation existed.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed November 10, 1923. Affirmed.

*John W. Adams, William J. Wertz,* and *George L. Adams,* all of Wichita, for the appellant.

*William Keith, Charles A. Walsh,* and *Monroe Wright,* all of Wichita, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to quiet title to real estate in Wichita. The plaintiff prevailed, and the defendant appeals.

Walker claimed title under a deed from Maria Lee. The court found Maria Lee was holder of the naked legal title only, that she held such title as trustee for the benefit of Taylor, and that her conveyance to Walker was fraudulent and in violation of the trust. The evidence for Walker contradicted the evidence for Taylor. Both accounts of the origin and devolution of title could not be true. The court believed the evidence for Taylor and, in considering the appeal, this court must disregard the evidence for Walker. Besides that, Taylor's evidence must be regarded in the light most favorable to him, and all inferences reasonably derivable from the evidence favorable to him must be indulged, in support of the court's findings of fact. This being true, the question is whether there was any substantial evidence to sustain the finding of trust and violation of trust.

Taylor purchased the lots in controversy, and others, with his own money, in 1902. He bought a house, moved it upon the lots,

made it habitable, and established there a home for himself and wife, his mother and sister, a nephew, and a cousin. His mother and sister were without financial means of any kind, and were dependent upon him for support. There were incompatibilities between Taylor's wife and mother and, in order to provide a home for his mother in her declining years, his crippled and sickly sister, and his young relatives, title was taken in the name of the mother. In 1903, domestic difficulties made it necessary for Taylor and his wife to remove to Kansas City; but the record is replete with evidence, which need not be detailed here, that the property was regarded as his, and that he paid taxes, made improvements and repairs, and sent money for the support of his mother and sister. A few months after he removed to Kansas City, and in order to allay apprehensions of his mother and sister that his wife might put them out, Taylor, on request, consented his mother might deed the lots to his sister, Maria Lee, and his nephew, Bud Lee. They paid nothing for the conveyance. Taylor's relation to the property was not affected. In 1905, Bud Lee desired to get married, and obtained permission from Taylor to put a house on the south lots of the property. In 1907, Bud Lee, who was beginning to display business capacity, asked permission to mortgage the property. Taylor consented, and Bud Lee and Maria Lee gave a mortgage, which Bud Lee afterwards satisfied. Later, Bud Lee again asked and obtained permission to mortgage the property. This mortgage was in form a deed from Bud Lee and Maria Lee, and the mortgagee released by two deeds, one to Bud Lee of the south lots, and one to Maria Lee of the lots in controversy. These deeds were given in 1916, and were approved by Taylor. There was testimony that when Bud Lee desired to mortgage the lots, Maria Lee wrote to Taylor about it, and obtained his assurance it was all right, because, as she said, the property was his, and she did not want anything to come in and interfere while she was there. Taylor's cousin, Ora Taylor, who left the place in 1908, corroborated this testimony. Taylor's mother died in 1910, and his wife died in 1913. In 1917, he returned to the property, made repairs, erected outbuildings, and has ever since occupied it as his home. While living in Kansas City, Taylor made trips to Wichita to look after the property and its occupants. Maria Lee died July 12, 1920.

In 1905 or 1906, Everett Walker, a child five or six years of age, commenced to live with Maria Lee. He was in the house when

Taylor came back from Kansas City, and remained there until after Maria Lee's death. In September, 1920, Walker's father notified. Taylor his son had a deed to the property, and shortly afterward Walker commenced proceedings to put Taylor out. Walker disclaimed to Taylor personal responsibility for his action, and said it was his father's work. Taylor then learned his sister had made a deed to Walker, dated September 6, 1918, expressing a consideration of one dollar and love and affection, and reserving use of the property until after her death. Mrs. Chittenden testified she had possession of the deed for several months before Maria Lee died, and after her death, laid the deed on her dresser. The deed was recorded July 22, 1920.

Witnesses testified to conversations with Maria Lee in which she told them the property belonged to Taylor. To one of them she gave the reason for the title being in her name, and others heard her talk about it. Bud Lee testified the original intention was the property should be a family home, and testified to a conversation between Maria Lee and Taylor in the summer or fall of 1917, the substance of which was, it was understood and agreed the property would be Taylor's at her death. There was other convincing evidence that Taylor was not merely equitable owner, but the recognized dominant owner, whose will concerning management and enjoyment of the property was controlling, and that his sister, who, after 1917, was almost entirely dependent upon him, merely had a home and paper title, by virtue of his providence.

The statute provides that, when a conveyance for a valuable consideration is made to one person, and the consideration therefor is paid by another, no use or trust shall result in favor of the latter, but the title shall vest in the former. (Gen. Stat. 1915, § 11679.) The statute further provides, however, that the section referred to shall not extend to cases in which it shall be made to appear that, by agreement and without fraudulent intent, the party to whom the conveyance was made was to hold the land in trust for the party paying the purchase money. (Gen. Stat. 1915, § 11681.)

Maria Lee paid nothing for the conveyance to her, and took title merely to accomplish the purpose for which title was taken in the name of her mother. Her relation to the property was precisely the same as that of her mother, and the statute applies just as if the original conveyance had been made to her.

It will be observed the statute does not require the agreement to

Taylor v. Walker.

hold title in trust for the person paying the consideration to be in writing, and the court has held many times that a parol agreement is sufficient. The exception to the provisions of section 11679 is one of several in which a trust may be established by parol evidence, and it is sufficient that the court or jury trying the case be satisfied of the existence of the trust relation. The language of section 11681 is, "when it shall be made to appear." Direct evidence of agreement to hold for the person paying the purchase money is not indispensable. The agreement and its terms may be inferred from the relations of the parties, their financial means, their conduct and admissions, and other pertinent circumstantial evidence. The decision of this court in the case of *Lyons v. Berlau*, 67 Kan. 426, 73 Pac. 52, is conclusive upon the subject, and there are a number of other decisions to the same effect. The facts in this case are much stronger than those which were held sufficient in the Lyons case to justify the inference that the statute had been satisfied.

The evidence was, Taylor was a man who always paid his debts, and no fraud on his wife was intended or practiced. The property was purchased for a home for her as well as for others whom it fell to Taylor to support. He purchased a home in Kansas City, which he sold when he returned to Wichita to live. When he returned to Wichita, he lacked just fifty dollars of having one thousand dollars in cash in his pocket. (See *Rayl v. Rayl*, 58 Kan. 585, 50 Pac. 501.)

The deed from Maria Lee -to Walker was purely voluntary. Taylor testified that after he returned from Kansas City Walker frequently borrowed money from him, and that Walker's contributions to the family supplies were a sack of flour, a few potatoes, and occasionlly some cookies and fruit.

Taylor and Maria Lee were brother and sister, and he testified he had full confidence in her. When she died, the purpose for which title had been taken in her name had been accomplished. All the members of the original family were dead or had gone away except Taylor, who was in possession. The deed to Walker was a betrayal of confidence, and the court might well have quieted Taylor's title without finding an agreement to hold the legal title for him. (*Silvers v. Howard*, 106 Kan. 762, 190 Pac. 1.)

The judgment of the district court is affirmed.